UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRIKA JEANNE MELLON,                    Case No. 14-14374

          Plaintiff,           Robert H. Cleland
v.                                      United States District Judge

COMMISSIONER OF SOCIAL SECURITY,        Stephanie Dawkins Davis
                                        United States Magistrate Judge
          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 13)**

## I.   PROCEDURAL HISTORY

    A.   <u>Proceedings in this Court</u>

On November 14, 2014, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Robert H. Cleland referred this matter to Magistrate Judge Michael Hluchaniuk for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for benefits. (Dkt. 3). This matter was reassigned to the undersigned Magistrate Judge on January 5, 2016, pursuant to administrative order. (*See* Text-Only Order dated January 5, 2016). This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 12, 13).

B.    Administrative Proceedings

Plaintiff filed the instant claims for period of disability and disability insurance benefits on June 4, 2009, alleging disability beginning January 21, 2006. (Dkt. 10-3, Pg ID 108).  Plaintiff's claim was initially disapproved by the Commissioner on October 30, 2009.  *Id*.  Plaintiff requested a hearing and on May 24, 2011, plaintiff appeared, along with her attorney, before Administrative Law Judge (ALJ) Andrew G. Sloss, who considered the case de novo.  (Dkt. 10-3, Pg ID 105-116).  In a decision dated June 28, 2011, the ALJ found that plaintiff was not disabled.  *Id*.  Plaintiff requested a review of this decision on September 1, 2011.  (Dkt. 10-4, Pg ID 234).  On October 5, 2012, the Appeals Council remanded the matter back to the ALJ for further review.  (Dkt. 10-3, Pg ID 121-125).

After remand, ALJ Kevin Detherage held a hearing on April 24, 2013. (Dkt. 10-3, Pg ID 129).  He then issued a second decision denying plaintiff's request for benefits dated June 20, 2013.  (Dkt. 10-3, Pg ID 126-143).  On July 15, 2013, plaintiff requested review of the second ALJ decision.  (Dkt. 10-2, Pg ID 41).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council on October 3, 2014,

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not

denied plaintiff's request for review. (Dkt. 10-2, Pg ID 38-41); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born in 1972 and was 37 years old on the last date insured of March 31, 2010. (Dkt. 10-2, Pg ID 141). The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Dkt. 10-3, Pg ID 132). At step two, the ALJ found that plaintiff's left radial neuropathy and degenerative disc disease of the cervical and lumbar spine were "severe" within the meaning of the second sequential step. (Dkt. 10-3, Pg ID 132). At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 10-3, Pg ID 134). The ALJ determined that

---

part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

plaintiff had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find
> that, through the date last insured, the claimant had the
> residual functional capacity to perform unskilled light
> work as defined in 20 CFR 404.1567(b). She can
> frequently finger with her upper extremities. The
> claimant must have the opportunity to sit or stand at will
> provided this does not take her "off task" for more than
> 9% of the workday. The claimant can occasionally climb
> ramps and stairs. She can never climb ladders, ropes, or
> scaffolds. The claimant can occasionally kneel, stoop,
> crouch, and crawl.

(Dkt. 10-3, Pg ID 135). At step four, the ALJ concluded that plaintiff could not

perform her past relevant work as a waiter and shift manager. (Dkt. 10-3, Pg ID

141). At step five, the ALJ denied plaintiff benefits because plaintiff could

perform a significant number of jobs available in the national economy. (Dkt. 10-

3, Pg ID 142).

   B.   Plaintiff's Claims of Error

Plaintiff contends that the ALJ erred by failing to consider her multiple

impairments and the effects of the combination of those impairments. According

to plaintiff, she suffers from disc disease, multiple sclerosis, fibromyalgia, spinal

stenosis, facet joint disease, depression, anxiety, insomnia, and hypertension. She

maintains that the medical records plainly evidence these conditions and their

existence is also supported by her testimony and physical limitations.

Plaintiff also contends that the ALJ committed reversible error by

4

disregarding the medical records provided by her treating physician, Dr. Gavin Awerbuch.  According to plaintiff, Dr. Awerbuch's records support the various medical conditions from which plaintiff suffers and confirm her testimony regarding her symptoms.  Plaintiff contends that Dr. Awerbuch's opinion that she is totally and permanently disabled from working on a full-time basis is supported by the medical records.

C.     The Commissioner's Motion for Summary Judgment

The Commissioner argues at the outset that plaintiff's entire brief is egregiously insufficient in its attempt to raise legal arguments and her arguments should, therefore, be deemed waived.  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").  According to the Commissioner, plaintiff failed to include a single citation to the transcript in her brief, a single citation to a statute or regulation, and provided a citation to only one case.  While the Commissioner urges the Court to reject plaintiff's arguments on this bases, the Commissioner also addresses the substantive issues raised by plaintiff.

The Commissioner maintains that the ALJ properly considered plaintiff's

5

impairments at step two of the sequential evaluation, determining that the evidence
established that her left radial neuropathy and degenerative disc disease of the
cervical and lumbar spine were severe impairments within the meaning of the Act.
Tr. 94-96. While plaintiff contends that the ALJ erred in concluding several other
impairments were non-severe, including multiple sclerosis, fibromyalgia, spinal
stenosis, facet joint disease, depression, anxiety, and hypertension, when the
evidence was "filled with medical records and reports diagnosing [her] with
multiple impairments," the Commissioner says that plaintiff's arguments are
unavailing.

According to the Commissioner, the ALJ thoroughly discussed plaintiff's
impairments and his reasoning for finding numerous of her alleged disabling
conditions non-severe within the meaning of the Act. Tr. 94-96. Although
plaintiff alleged she was disabled by spinal stenosis, based on a finding of mild
stenosis in a September 2009 CT scan, the Commissioner points out that a January
2010 MRI of plaintiff's cervical, thoracic, and lumbar spine revealed no evidence
of stenosis. (Tr. 15, 20, 95, 521-23, 543-45, 750). Additionally, while plaintiff
testified that her arthritis was disabling, the ALJ determined this was "not [a]
medically determined" condition, where there was no evidence of joint deformities
or joint swelling in the record. (Tr. 15, 20, 95, 580-82); *see Long v. Apfel*, 1 Fed.
Appx. 326, 330-31 (6th Cir. 2001) (where medical records "contain no

6

information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition, [the Sixth Circuit] has regularly found substantial evidence to support a finding of no severe impairment").

Similarly, the Commissioner points out that there was no evidence that plaintiff sought therapy or specialized psychiatric treatment for her depression or anxiety. (Tr. 95). Although plaintiff was prescribed some medications by her primary care provider for depression and anxiety based on her subjective complaints, the Commissioner maintains that this evidence was insufficient to demonstrate that these impairments limited her ability to do basic work activities. (Tr. 95, 366-67, 385, 396). According to the Commissioner, plaintiff's hypertension was also not severe because there was no evidence that the condition was uncontrolled by medication. (Tr. 26, 43, 95, 362, 394, 406, 421-22, 675-76); *see Harris v. Comm'r of Soc. Sec.*, 2014 WL 793612, at *9 (E.D. Mich. Feb. 27, 2014) ("despite several visits to the emergency room, the record shows the [plaintiff's] treatment was routine and her conditions were either controlled with medications or asymptomatic"; "the sparse medical evidence establishes only slight abnormalities that would have no more than minimal effects on her ability to work"). The Commissioner argues that the mere existence of these medical impairments cannot establish that plaintiff was significantly limited in her ability to perform basic work activities.

7

As to plaintiff's fibromyalgia and multiple sclerosis, the Commissioner points out that she fails to acknowledge in her brief the relevance of her date last insured. Plaintiff's neurologist, Dr. Awerbuch, diagnosed both conditions, but plaintiff did not begin treating with the doctor until April 2011, over one year after her date last insured in March 2010. Tr. 929. As the ALJ correctly found, plaintiff's fibromyalgia was "not medically determined" prior to her date last insured in March 2010. (Tr. 95-96). Dr. Awerbuch and his physician's assistant, Derrick Jauss, opined that plaintiff had "12 trigger points"; however, they were not identified, nor were there any other specific findings in support of the diagnosis, such as electromyographical studies or evidence of neuropathy in all four quadrants of plaintiff's body. (Tr. 95, 918-32); *see also* Social Security Ruling (SSR) 12-2p, 2012 WL 3104869, at *2-3 (July 25, 2012) (medically determined impairment of fibromyalgia can be shown either by a history of widespread pain in all four quadrants of the body, at least eleven positive trigger points, found bilaterally on the body, and evidence that other disorders that could cause the symptoms have been ruled out or a history of widespread pain in all four quadrants of the body, repeated manifestations of six or more fibromyalgia symptoms, and evidence that other disorders that could cause the symptoms were ruled out). The Commissioner also points out that plaintiff was never seen by a rheumatologist or another fibromyalgia specialist, and prior to her date last insured and plaintiff's

clinical neurological examinations were normal.  (Tr. 95-96, 469-70, 486-87, 492-94, 500-02).

In addition, the Commissioner points out that Dr. Awerbuch diagnosed plaintiff with only "possible" multiple sclerosis on October 15, 2012 and plaintiff reiterated the diagnosis in her testimony.  (Tr. 15, 17-18, 917-18).  As the ALJ indicated, there was nothing in plaintiff's treatment records to corroborate the diagnosis prior to her date last insured.  (Tr. 96).  CT scans and an MRI of plaintiff's brain were normal, as was an electroencephalogram.  (Tr. 449, 481, 497, 510-11, 542, 751).  The Commissioner contends that without sufficient support for the diagnosis even within Dr. Awerbuch's treatment records, which were well past the date last insured, the ALJ properly found that plaintiff's multiple sclerosis was also "not medically determined."  (Tr. 96, 917-19).  Thus, the Commissioner maintains that there was no error in the ALJ's step two evaluation of plaintiff's impairments.

Next, the Commissioner asserts that substantial evidence supported the ALJ's finding that gave "little" weight to Dr. Awerbuch's opinion, where it was inconsistent with plaintiff's medical tests and clinical examinations and there was a limited treatment relationship.  (Tr. 102-03).  According to the Commissioner, plaintiff erroneously contends that there was "no evidence to the contrary" of the severe limitations in Dr. Awerbuch's opinion and that the records confirmed her

9

testimony as to her symptoms and disability. 20 C.F.R. § 404.1527(c)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). On June 20, 2011, 15 months after plaintiff's date last insured, Dr. Awerbuch completed a "Medical Assessment of Ability to Do Work-Related Activities (Physical)" form. (Tr. 827-30). Dr. Awerbuch opined that plaintiff could sit for one hour, stand for thirty minutes, and walk for thirty minutes, without interruption. (Tr. 827). During a normal workday, plaintiff could sit for a total of two hours, stand for one hour, walk for one hour, and sit and stand as needed for two hours. (Tr. 827). The doctor also stated that plaintiff would need to lie down during the course of the day. (Tr. 827). The doctor stated that plaintiff's deficits had been present since 2008 and that her disability would prevent her from being available to work during the course of a month. (Tr. 827). When asked how many work days per month plaintiff would be unavailable during the month, the doctor unresponsively stated two weeks to eight months. (Tr. 827). Dr. Awerbuch opined plaintiff could occasionally lift and carry both five and ten pounds. (Tr. 828). He stated plaintiff could occasionally perform simple grasping and fine manipulation with both her hands. (Tr. 828). Plaintiff could never push or pull ten or twenty pounds. (Tr. 828). Dr. Awerbuch also opined that plaintiff could not use either her feet or her legs for repetitive movements, such as the operation of foot controls. (Tr. 828). He stated she could occasionally bend,

twist, reach above shoulder level, squat, kneel, and climb stairs, but could never climb ladders, crouch, crawl, or stoop. (Tr. 829). Plaintiff had sensory limitations affecting her feeling and balance. (Tr. 829). Dr. Awerbuch opined that plaintiff should be moderately restricted in her exposure to unprotected heights, moving machinery, temperature extremes, chemicals, dust, fumes, cold and wet weather, vibration, and humidity. (Tr. 829). Plaintiff was only mildly restricted in her ability to tolerate noise and operate an automobile. (Tr. 829). He opined that plaintiff could not use a keyboard. (Tr. 830). Finally, Dr. Awerbuch stated that plaintiff's subjective complaints were consistent with the objective medical findings and that his assessment was based on Plaintiff's examination on April 26, 2011. (Tr. 830).

Assessing Dr. Awerbuch's opinion, the ALJ found it "indicated very severe limitations that were not supported by [plaintiff's] medical tests and/or clinical examinations that were largely benign." (Tr. 102). Although Dr. Awerbuch speculated plaintiff's multiple sclerosis was present beginning in 2006 and opined that her impairments dated back to 2008, he did not begin treating plaintiff until April 2011. (Tr. 102). The ALJ found the evidence from the period before she began treating with Dr. Awerbuch did not support the doctor's opinion. (Tr. 102). Finally, the ALJ noted that plaintiff had a limited treatment relationship with the doctor, as she saw the doctor only four times a year after April 2011. (Tr. 103).

11

The ALJ gave the opinion "little weight."  (Tr. 103).

Plaintiff contends the ALJ erred by "disregarding the medical records" from treating physician Awerbuch and thus appears to be arguing that the ALJ erred in giving "little weight" to Dr. Awerbuch's opinion because there was no evidence in the record contrary to his records.  (Pl. Br. at 3-4).  Plaintiff contends Dr. Awerbuch's records support that she suffers from various medical conditions, confirm plaintiff's testimony as to her symptoms, and his opinion that Plaintiff's conditions render her permanently disabled from full-time employment. According to the Commissioner, plaintiff's argument fails to acknowledge that Dr. Awerbuch began treating plaintiff over one year after the date last insured, which is entirely relevant to the ALJ's analysis.  (Tr. 94, 929); *see* 42 U.S.C. § 423(a); 20 C.F.R. § 404.101; *Despins v. Comm'r of Soc. Sec.*, 257 Fed. Appx. 923, 929 (6th Cir. 2007).  Because Dr. Awerbuch did not begin treating plaintiff or assess plaintiff's work-related abilities until after the date last insured, the ALJ was tasked with determining whether the doctor's opinion and treatment notes supported his opinion that plaintiff was disabled beginning in 2008, before the date last insured.  (Tr. 827-30).  The Commissioner maintains that in reviewing Dr. Awerbuch's treatment notes, in addition to plaintiff's medical records that pre-dated her treatment with Dr. Awerbuch, the ALJ correctly concluded that the doctor's opinion that plaintiff's severe limitations began in 2008 was not

12

supported by the record.  (Tr. 102, 917-32); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (weighing conflicting evidence falls squarely within the ALJ's province; the Court should not disturb sensible resolution of these conflicts).

In this vein, the Commissioner asserts that the ALJ's conclusion that Dr. Awerbuch's opinion was entitled to "little" weight due to inconsistency with the record is supported by substantial evidence.  *See Mead v. Comm'r of Soc. Sec.*, 2014 WL 1366467, at *11 (W.D. Mich. Mar. 31, 2014) (explaining that the ALJ may discount a treating source's opinion when the "doctor's treatment notes do not contain findings or observations consistent with her subsequent opinion that Plaintiff suffers from such extreme limitations"); 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").  Plaintiff stopped working on her alleged onset date of disability, January 21, 2006.  (Tr. 260-73).  The Commissioner extensively recounts what she characterizes as the minor medical findings prior to treating with Dr. Awerbuch.

In August 2006, plaintiff presented to the emergency room complaining of high blood pressure; however, she admitted she was not taking her medication and was smoking two packages of cigarettes a day.  (Tr. 421-22).  On examination, she did not appear in any physical pain and walked and sat comfortably.  (Tr. 421-22).  Plaintiff complained of foot pain in July 2008, but her x-rays were normal.  (Tr.

388).  On physical examination in November 2008, plaintiff could walk without assistance, straight leg raising was normal, her coordination and reflexes were normal.  (Tr. 381-82).  Plaintiff's MRI was normal and she was prescribed non-narcotic pain medication.  (Tr. 381-82).  In December 2008, plaintiff walked normally with a steady gait and was able to heel-to-toe walk.  (Tr. 842).  In January and February 2009, plaintiff was treated at American Missionary Care Clinic for pain, in addition to Matrix Pain Management.  (Tr. 363-65, 832-34).  During her appointments, when seeking refills of her pain medication, plaintiff was observed with a steady, non-antalgic gait and was able to move and arise from a seated position easily.  (Tr. 833).  There was no tenderness in lumbar spine with palpation, no muscle spasm or wasting, her range of motion was normal, and straight leg raising was normal.  (Tr. 833).  Plaintiff had no joint swelling in her arms or legs and her strength in her upper and lower extremities was "5/5."  (Tr. 833).  Finally, plaintiff's thoracic MRI and bone scans were normal.  Plaintiff's pain doctor suspected her complaints had a psychiatric component, suggested physical therapy, and prescribed Flexeril and Baclofen.  (Tr. 833-34).

After falling asleep on her wrist, plaintiff complained of "left wrist drop." (Tr. 423).  In July 2009, electrodiagnostic tests of plaintiff's left upper extremity showed left radial neuropathy, but there was no evidence she was a surgical candidate.  (Tr. 424-27).  Plaintiff was recommended conservative treatment,

14

including physical therapy and wrist splinting, which appeared to be effective.

(Tr. 424). Although plaintiff continued to complain that she was unable to move

her hand, she was observed by her primary care physician moving her hand. (Tr.

456-57).

Plaintiff saw neurologist E. Malcolm Field, M.D., in September 2009. (Tr.

469-70). Plaintiff complained of pain in her upper back and was wearing a splint

on her left wrist. (Tr. 469). The doctor found plaintiff had no loss of sensation in

her left hand and was able to move her wrist and fingers. (Tr. 469). Plaintiff's

spine appeared normal, she had full range of motion in her neck, arms, and legs,

her reflexes were normal, and there was no evidence of sensory loss. (Tr. 469-70).

Plaintiff was observed walking normally, although she complained of lumbar pain.

(Tr. 470). The doctor had "no definite answer" for plaintiff's complaints, but

ordered further tests. (Tr. 470). In October 2009, plaintiff received pain blocks in

her lumbar spine. (Tr. 743-44).

In January 2010, plaintiff was hospitalized for a few days for headaches,

dizziness, and back pain. (Tr. 524-26). An MRI of plaintiff's brain and thoracic

spine were normal. (Tr. 542, 545). Her MRI of her cervical spine showed

minimal bulging and spurring at C2-C3 and her lumbar spine had mild

degenerative changes at L5-S1, with no evidence of stenosis. (Tr. 521-22,

543-44). While in the hospital, plaintiff tried to sneak drugs and was seen walking

15

outside the hospital on several occasions to smoke.  (Tr. 524-25).  Plaintiff was

discharged home in stable condition.  (Tr. 525-26).  Plaintiff received pain blocks

in her lumbar spine in January 2010.  (Tr. 741-42).

The Commissioner further points out that the ALJ also thoroughly reviewed

plaintiff's treatment notes, including Dr. Awerbuch's records, from after her date

last insured, March 31, 2010.  (Tr. 100-02).  Plaintiff's treatment notes continued

to indicate a wide variance between her observed and stated abilities and her

complaints of pain.  (Tr. 100-02).  Plaintiff admitted to smoking and drinking

alcohol while taking pain medications and her medications were monitored more

closely, in that they were not dispensed without face-to-face contact.  (Tr. 454-55).

Psychiatric counseling for drug dependence was recommended.  (Tr. 454-55).

Plaintiff's treating physician William Marrone, M.D., suspected Munchausen's

Syndrome and eventually discharged plaintiff from his practice in February 2011

due to a breakdown of the doctor-patient relationship.  (Tr. 804-06).

After being dismissed by Dr. Marrone, plaintiff began seeing Darin Morse,

D.O.  (Tr. 101, 759-803).  At her first visit, plaintiff was able to walk normally,

bend at the waist and knees to retrieve something from the floor, twist and bend to

retrieve her purse, and sit up on the treatment table with crossed legs.  (Tr. 791).

Plaintiff's posture was normal.  (Tr. 791).  Plaintiff was relaxed, did not appear

anxious, and could recall her medical history.  (Tr. 791).  However, plaintiff

continued to engage in drug-seeking behavior and in April 2011, when denied refills on her narcotic medications, plaintiff stopped seeing Dr. Morse. (Tr. 101, 759).

The Commissioner also asserts that the ALJ thoroughly discussed Dr. Awerbuch's treatment notes. (Tr. 101-02). Although Dr. Awerbuch diagnosed plaintiff with multiple sclerosis between October and November 2012, he indicated she would need further testing. (Tr. 102, 917-19). Further, the treatment notes do not include clinical testing that led to the doctor's diagnosis. (Tr. 917-19). Dr. Awerbuch did not diagnose plaintiff with multiple sclerosis until treating her for over a year and there is nothing in his records to indicate that the condition was present before plaintiff's date last insured. (Tr. 102, 917-32). Thus, the Commissioner maintains that there was no error in the ALJ's assignment of "little weight" to Dr. Awerbuch's opinion where it was not fully supported by his own treatment notes or plaintiff's medical history that pre-dated her date last insured.

According to the Commissioner, the ALJ properly applied the two-step test for evaluating plaintiff's alleged impairments, and substantial evidence supports his finding that plaintiff's allegations were not entirely credible. (Tr. 97-103); *see* 20 C.F.R. § 404.1529; *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); *Duncan v. Sec'y of Health & Human Servs*., 801 F.2d 847, 852-53 (6th Cir. 1992).

17

Plaintiff appears to allege error with the second step of the determination, which requires the ALJ to consider whether the objective medical evidence and other evidence relevant to the severity of the impairments—e.g., plaintiff's daily activities, specific descriptions of her symptoms, the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms, and treatment received to relieve symptoms—support plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms.  However, the Commissioner asserts that plaintiff has not provided a "compelling reason" to disturb the ALJ's credibility assessment.  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

The Commissioner further contends that nowhere in plaintiff's argument has she articulated a particular error in the ALJ's credibility determination, except to imply that the ALJ should have weighed the medical evidence differently.  Nor has she shown how any of the medical evidence required more restrictive limitations in the RFC or a finding of disability.  *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *5-8.  And, "an ALJ is not required to accept [a claimant's] subjective complaints and may properly consider the credibility of [a claimant] when making a determination of disability."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003).  According to the Commissioner, the ALJ properly found in this case that plaintiff's complaints as to the intensity, persistence, and limiting effects of her pain were not consistent with the activities

18

she engaged in, particularly in light of the largely benign clinical findings during the period that predated her date last insured.  (Tr. 103); *see Walters*, 127 F.3d at 531-32 (ALJ properly considered plaintiff's household and social activities—such as ability to run all errands, walk two miles, prepare all meals, and drive three times a week—in evaluating plaintiff's assertions of pain or ailments).  Plaintiff was a mother of four, and reported she was considering adopting more children, her husband was a truck driver and yet plaintiff reported he performed all of the household chores, she stated she could play with her children, carry firewood, drive to Detroit, and travel to visit friends.  (Tr. 103).  Further, plaintiff's medical record indicates she exaggerated her pain symptoms in order to obtain narcotic drugs from multiple providers.  (Tr. 103).  Although plaintiff stated that her medications did not relieve her pain, she continued to go out of her way to obtain more pain medication.  (Tr. 103).

The Commissioner points out that the Sixth Circuit has held that a reviewing court is to uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence.  *Cornette v. Sec'y of Health & Human Servs.*, 869 F.2d 260, 263 (6th Cir. 1988).  The Court has also determined that it is not its role to assess the credibility of a claimant, as that duty is reserved to the ALJ.  *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir.

2001). Where the ALJ's credibility determination was thoroughly supported by substantial evidence of record, there was no error in his decision. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Accordingly, the Commissioner urges the Court to conclude that the ALJ's credibility finding is supported by substantial evidence.

    D.   <u>Plaintiff's Reply</u>

Plaintiff's reply is a bit disjointed and difficult to follow. In addition, as with her initial brief, plaintiff does not cite to anything in the record to support her statements. She appears to argue that her left wrist and hand paralysis was documented by medical records submitted to the Social Security Administration but the ALJ ignored these records. Plaintiff acknowledges that the cause of both conditions had subsided, but maintains that this medical condition strongly supports her testimony that she was suffering from this condition whether it was properly called carpal tunnel or not. Plaintiff suggests that the ALJ improperly relied on the fact that plaintiff called her condition carpal tunnel.

Plaintiff also finds fault with the ALJ's conclusion that her testimony that she could only walk one block and stand for five minutes was not credible. The ALJ ruled that this testimony was not credible because he claimed that he saw her walk in the parking lot at the Social Security Administrative building following the hearing. According to plaintiff, the ALJ did not see or hear any of the

complaints that she was making about how she was hurting while she was walking and crying.  Plaintiff maintains that the ALJ's "superficial observation" that she appeared to be fine is not supported by any of the records and her doctors support her position that she can only walk so far, can stand for so long, can sit for so long and then it is necessary for her to lay down throughout the day because of the pain.  Dr. Awerbuch prepared the residual assessment document and he clearly stated in there that she had limitations as to all of these various functions.  Thus, plaintiff contends that the finding that her testimony was not credible as to these limitations is inaccurate and contrary to both her testimony and the medical records submitted.

The ALJ in his opinion states that he was giving little weight to the testimony of Dr. Awerbuch for the reason that plaintiff did not start treating with Dr. Awerbuch until April of 2011.  Plaintiff points out, however, that once the patient-doctor relationship was initiated by the parties, Dr. Awerbuch reviewed all of her past medical records provided by Dr. Morrone's office.  In addition, he had various tests performed on his own that substantiated his findings and his opinion that plaintiff is disabled should not be overlooked.  According to plaintiff, many of the symptoms of the MS are all symptoms that existed before plaintiff's last date insured.  Reviewing Dr. Morrone's records and the Matrix Pain Clinic, these records all substantiate the fact that she was suffering from these conditions and

the fact that someone had not specifically diagnosed her with MS does not mean that she did not have MS back in 2008.  Plaintiff also points out that she requested testing for MS because of a family history dealing with MS and despite this request, Dr. Morrone failed to have her tested.

Plaintiff also contends that the ALJ erred in concluding that her pain complaints were not credible.  According to plaintiff, the majority of the medical records support the position that she provided history to the doctors of her constant pain and the doctors continually have her tested.  Some of the tests come out positive and some would come out negative, but they continued to test her.

The ALJ further in his opinion stated that plaintiff appeared to be engaging in prescription drug seeking behavior and the use of alcohol while taking her prescribed medication.  In reviewing the medical records, plaintiff said she could find no evidence that stated that she went to a doctor's office in October of 2010 smelling of alcohol.  According to plaintiff, she has not consumed alcohol since the end of 2008 up to the time of the hearing.

The ALJ states several times that plaintiff was able to care for four children. Plaintiff points out that in 2008 the children were 22, 16, 16 and 13 years of age and none of them were residing with plaintiff and her husband. The ALJ further claimed that plaintiff drove to Detroit to pick up her children.  Plaintiff says that her children never lived in Detroit; rather, they lived in Ubly, Michigan which is

22

located in the Thumb Area.

Plaintiff also testified that she suffers from depression, panic disorder, anxiety and stress. She has treated with her family physician, both Dr. Morrone and Dr. Awerbuch for this condition. They prescribed medication for her and she has continued to use this medication as directed by her doctors. Plaintiff says that she did not seek treatment with a psychiatrist since she was not advised to by her treating physicians.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

*de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of*

25

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch,

26

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

28

decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

     C.    <u>Analysis and Conclusions</u>

         1.    Inadequacy of plaintiff's briefing

While the undersigned has thoroughly reviewed the record evidence, the parties' submissions, and the ALJ's decision, plaintiff cannot simply make the bald assertion that the ALJ erred, while leaving it to the Court to scour the record to support this claim.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to ... put flesh on its bones.") (citation omitted); *Crocker v. Comm'r of Soc. Sec.*, 2010 WL 882831 at *6 (W.D. Mich. Mar. 9, 2010) ("This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.") (citation omitted).  In the view of the undersigned, all of plaintiff's arguments are wholly insufficient and undeveloped.  Plaintiff offers no basis whatsoever for the Court to conclude that the ALJ's decision is not supported by substantial evidence and offers no factual or legal basis for the Court

to conclude that the ALJ committed reversible error of any sort. Plaintiff's initial brief and reply brief contain no citations at all to the administrative record, and are bereft of citations to any legal authority. Plaintiff's claim that the ALJ's RFC determination is in error because that determination does not include plaintiff's subjective testimony is unavailing, as "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability," and "can present a hypothetical to the [vocational expert] on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Thus, the undersigned concludes that plaintiff has failed to identify or properly develop any support for a reversible error and her motion for summary judgment should be denied on this basis. In the alternative, the undersigned will address the substantive issues that appear to have been identified in plaintiff's briefing.

2.    Alleged Step Two error

The undersigned concludes that plaintiff's claimed Step Two error should be rejected. At step two of the sequential evaluation the claimant bears the burden of showing a severe impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). In order to meet this burden, the claimant must demonstrate a medically determinable impairment that significantly limits her physical or mental ability to do basic work

30

activities. *Kilgore v. Colvin*, 2014 WL 5594984, at *3 (E.D. Ky. 2014), citing 20 C.F.R. §§ 404, 1508, 404.1521. Plaintiff has the burden of proof to show not only that she has a medically-determinable impairment, but that it is so severe that it prevents her from engaging in her past relevant work or any other substantial gainful activity that exists in the national economy. *Cade v. Colvin*, 2014 WL 5518149, at *6 (N.D. Ohio 2014). At Step Two, an ALJ must first evaluate the claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment(s)." *Fiore v. Soc. Sec. Comm'r*, 2013 WL 6410375 (S.D. Ohio 2013) (quoting *Rabbers v.Soc. Sec. Comm'r*, 582 F.3d 647, 652-53 (6th Cir. 2009). The burden of establishing the medically determinable impairment rests squarely on a claimant, given that the Act provides that "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." *Bowen*, 482 U.S. at 146. Here, plaintiff simply points to no medical evidence in this record to support her claim that she suffers from any additional medically determinable impairments during the relevant time frame, other than those identified by the ALJ.

Even if the ALJ erred by failing to find one or more of plaintiff's claimed additional impairments were "severe," the omission of an impairment from the Step Two findings would not warrant remand because the ALJ found that plaintiff

31

had at least one impairment that met the criteria for severity at Step Two, and thus proceeded to Step Three in the sequential analysis. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (holding that because the Secretary had found at least one other "severe" limitation, the severity of Maziarz's cervical condition was irrelevant for the Step Two analysis). If a claimant has more than one impairment, the ALJ must consider all medically determinable impairments when assessing the RFC, including those that are not severe. 20 C.F.R. § 404.1545(a)(3); *Fisk v. Astrue*, 253 Fed.Appx. 580, 584 (6th Cir. 2007) (noting that once the ALJ determines at least one severe impairment, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'").

Notably, plaintiff points to no medical opinions in the record from the time frame at issue suggesting that she was more limited than as found by the ALJ. Indeed, plaintiff has done nothing more than identify additional conditions from which she suffers. Merely because plaintiff carries a certain diagnosis does not make it necessarily severe or mandate that it renders plaintiff impaired or disabled. Indeed, as the Commissioner points out, plaintiff's argument in this regard appears to rely almost entirely on medical records from after the last date insured, while ignoring the medical records pre-dating the last date insured. And, as discussed below, Dr. Awerbuch's retrospective opinion was properly given little weight by

32

the ALJ.

        3.    Dr. Awerbuch's Opinion

The Commissioner also convincingly establishes that the ALJ's RFC is well-supported by substantial evidence and that plaintiff's credible limitations were accommodated in the RFC. As to Dr. Awerbuch, the ALJ explained that his retrospective opinion is not supported by the medical records during the relevant time period. It is true that merely because a medical opinion is "retrospective," it is not necessarily deficient and may be entitled to the same deference given to all treating physician opinions. However, where the treating physician who offers the retrospective opinion did not treat the claimant during the time frame at issue, such deference may not be appropriate. *See e.g.*, *Wladysiak v. Comm'r of Soc.* Sec., 2013 WL 2480665, at *11 (E.D. Mich. 2013) (citing *Lancaster v. Astrue*, 2009 WL 1851407, at *11 (M.D. Tenn. 2009)) ("[A] retrospective diagnosis relating back to the insured period may be considered proof of disability only if it is corroborated by evidence contemporaneous with the eligible period."); *Clendening v. Astrue*, 2011 WL 1130448, *5 (N.D. Ohio 2011) (retrospective opinions not entitled to deference where treating physician had no first-hand knowledge of the claimant's condition prior to the last date insured.), *aff'd*, 482 Fed. Appx. 93 (6th Cir. 2012). Here, plaintiff has not connected the limitations set forth in Dr. Awerbuch's opinion with the time frame before her last date insured. Thus, the

ALJ appropriately concluded that Dr. Awerbuch's opinions were not entitled to deference or significant weight.

      4.     Credibility

Plaintiff argues that the ALJ erred in concluding that her testimony as to the intensity and persistence of her symptoms associated with her impairments was not entirely credible. As the relevant Social Security regulations make clear; however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929. Instead, the Sixth Circuit has repeatedly held that "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir. 2004); *see also Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). "It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). As the Sixth Circuit has held, determinations of credibility related to subjective

complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted).  Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record.  *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible.  SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1529.  Consistency between the plaintiff's subjective complaints and the record evidence 'tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect."  *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

35

Here, the undersigned agrees with the Commissioner that plaintiff's credibility argument is merely an allegation that the evidence of record was not weighed properly by the ALJ. Essentially, plaintiff is asserting a claim of improper "cherry-picking" of the record by the ALJ. It is generally recognized that an ALJ "may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." *Smith v. Comm'r of Soc. Sec.*, 2013 WL 943874, at *6 (N.D. Ohio 2013), citing *Goble v. Astrue*, 385 Fed. Appx. 588, 593 (7th Cir. 2010) (citation omitted). Yet, "the ALJ does not 'cherry pick' the evidence merely by resolving some inconsistencies unfavorably to a claimant's position." *Id.*, quoting *Solembrino v. Astrue*, 2011 WL 2115872, at *8 (N.D. Ohio 2011). The undersigned cannot conduct a *de novo* review of the record evidence, and the findings of the ALJ are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citation omitted); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached.") (citation omitted). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). Thus, it is not

36

uncommon in disability cases for there to be some inconsistencies in the record.  It is the duty of the ALJ to resolve any inconsistencies in the evidence, and the ALJ does not "cherry pick" the evidence merely by resolving some inconsistencies unfavorably to a claimant's position.  *See Smith*, 2013 WL 943874, at *6 ("Rather than describing the ALJ's actions as 'cherry-picking,' the Sixth Circuit has explained that it could be more neutrally described as 'weighing the evidence.'"), citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009).  In the view of the undersigned, that is precisely what the ALJ did here.  He weighed the evidence and made a determination, supported by substantial evidence, that plaintiff is not disabled.  The undersigned sees no evidence of improper "cherry-picking" of the record or any improper credibility assessment.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 9, 2016                    s/Stephanie Dawkins Davis
                                          Stephanie Dawkins Davis
                                          United States Magistrate Judge

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on February 9, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov